We will now hear an argument in the case of Lewis v. United States. We will now hear an argument in the case of Lewis v. United States. There are just two issues in the case, and I would like to briefly address the first one as well as the second one. There were three experts that the defense objected to as qualifying as experts in the case, and in particular, the third expert, Corporal Castorania. He's the one who testified, you know, that the ANPP that was found in the car, the way it was packaged, you know, was clearly not for personal use, for drug dealing, and that, you know, drug dealers often have guns. But the serious problem is that he did not know whether ANPP was a controlled substance. And, you know, the ANPP is a... It was a precursor. Yes, it is. He got to know, and he knew the significance of that and how much it would be, and then that suggested it was not for personal use. If that were the point for which he was being qualified, he was not qualified, but the point for which he was being qualified was whether the amount that was found was personal use versus not, and I'm not sure I see how that defeats that. Well, the problem is that Mr. Lewis was not charged with trafficking in fentanyl. He was charged with trafficking in the precursor chemical, which at this ANPP has only recently been found to be illegal. But his point is that the amount of ANPP was not personal use amount, whether he knew that it was on the schedule or not. I understand that. But it still seems to me that how can someone be qualified as an expert in this drug trafficking and the very charge that Mr. Lewis is facing when he doesn't even know if it's illegal? That's the issue. And there are, you know, ANPP has only recently been found in the last couple of years to be, you know, an illegal controlled substance. Let's say you're right. Does that change the outcome of the case? Isn't there a harmlessness element to this? Well, it's clearly a tough issue, the harmlessness, but I think that given that this particular expert was called in order to show that this is drug trafficking and that this is not for personal use, and the fact that he didn't even know whether it was illegal. And we take your point, but as my colleague points out, the reason he was called was to talk about the quantity. And I struggle with how, even taking your point, how that really changes the outcome of anything and why that's not harmless. Well, I think that I'll agree that it's a tough call. You know, here, I will agree with that. But it seems to me that there are plenty of precursor chemicals or there are chemicals that go to make up all of these drugs that are out there now. And if it's not illegal, then it doesn't really make any difference. Now, ANPP is a controlled substance, but the fact that this individual did not know whether it was controlled, that seems to me to impact on his credibility, you know, as an expert. Okay, so we take that. Okay, what else do you want to tell us? Yes, I would like to go into the reasonable doubt instruction. The last sentence of the reasonable doubt instruction tells the jury that if the government has proved its case beyond a reasonable doubt, the jury has a duty to find the defendant guilty. And that's clearly not the law. Well, but you can say we review this only for plain error. Well, we have to because nobody objected to that, yes. And so the problem is even if it were error and obvious error, how do you show a harm to substantial rights? Because there's never a substantial right to a nullification. And so it's very hard to see how you can satisfy the third or fourth prongs of the Olotto test that, you know, affected substantial rights and then that it would affect the integrity of the proceedings not to allow the jury to be lawless. I disagree that this particular sentence has anything to do with nullification, and I'll explain why. First, the jury was clearly told right before this instruction that it had a duty to follow the law, regardless of whether they agreed with the law or not. And the whole theory for why this sentence is legally wrong is that it negates the power of nullification. That is correct, but it's also akin to a directed verdict, and you cannot have a directed verdict in a criminal case. Didn't they already decide in Kleinman, though, that the district court has no duty to instruct the jury that has a right of nullification? Does that overcome your concern in that regard? No, it doesn't. Okay, why? Because the jury, the judge cannot instruct a jury to find a particular verdict or a guilty verdict, no matter what the evidence is. Now, I'm going to concede that it really hasn't, this particular issue has not been addressed. I'm kind of surprised that no one has ever objected to it before. But I do have, okay, and I would point out that the Ninth Circuit is the only federal circuit that has a specific language in its pattern jury instructions that there is a duty to convict. It's one thing to say, you know, if you should or, you know, but all the circuits are very different. And the McCall case says that this particular instruction is fine, right? Well, not really. And the Ninth Circuit has this same language. Which case is that, the? Well, it's in the newer form in the pattern jury instructions. Well, I believe that the pattern. Do you have any case that says that what you want put in, can be put in? Well, I do have one argument in my favor. Do you have any cases? Yes, it's a case. All right. But it's a dissent. But it's by Justice Bragas, who's a brilliant justice, who also dissented at Olmstead, and that was ultimately overturned. Well, stipulated as a brilliant justice, but it is a dissent. Yes, but it's still, if I may. We have some colleagues that cite their own dissents. Okay, so in that particular case, in the Horning case, which is from 1920, the judge instructed the jury, you know, that there's really no dispute here, if you believe the witnesses. I can't tell you that you have to convict this guy, but anyway. And then the U.S. Supreme Court said, well, the jury does not have a duty to convict somebody. They can ignore the law and the facts, and they can find the person not guilty. We all agree with that. There's no disputes to that. But then Justice Bragas, he said no matter how overwhelming the evidence is, you cannot imply or coerce a jury into bringing a guilty verdict, and that is a directed verdict. Okay, well, I'm a big fan of Justice Bragas. But the fact is, as we've talked about, our case law says there's no duty on the part of the district judge to say you have a right of notification. The jury instruction in this case has been expressly approved by our case law, and it's a model jury instruction. Despite the brilliance of Justice Brandeis and the wonderful dissent he wrote, how does that help you? Well, it's still, because this is not nullification. This is not telling a jury they have a right to nullification. I thought that was your argument. No, it's not. My argument is that there is a right, but the argument is that to tell the jury, forget nullification. There's no state, nobody asked for a nullification instruction. This is not the kind of case that would normally, a jury would want to nullify, but it's still telling the jury that if the government's proven its case beyond a reasonable doubt, you must, you have a duty to convict them. That is a directed verdict, and that's completely different from nullification. And I've got about 40 years. Want to say that? Yes, please. Okay, why don't you say it that time. All right. All right. Ms. Rabbani, I'll bet you disagree. I do, Your Honor. Good morning. May it please the Court. Melissa Rabbani for the United States. I'd like to start by addressing this model instruction issue, and I think it's not possible to forget nullification. Appellant's argument is that this last sentence telling the jury that it has a duty to find the defendant guilty if it's convinced beyond a reasonable doubt. Appellant's argument is that that statement is inconsistent with the law, and that relies on the fact that there is this power of nullification. Appellant quotes the Merced case from the circuit in saying that the jury has the ability to find a defendant not guilty in the teeth of the law and the facts. But the Merced case actually goes on to say very explicitly the jury has the power to nullify. They don't have the right to do so. And Merced goes on to say that the court doesn't have the duty to ensure that the jury is able to exercise this freely. In other words, the court doesn't have to make the jury aware that that's something they can do. And then the Kleinman decision as the court. There's a difference between making them aware and saying something that explicitly tells them that they may not and that it's illegal for them to do so. To say that someone has a duty not to do something is that they are breaking the law if they were to do otherwise. Isn't that crossing the line? Because the whole nullification thing comes from the effort to go after the jurors in the Raleigh case. So why is it suggesting to jurors that they're breaking the law with the implications that come with that if they were not to find a guilty verdict? I understand, Your Honor. I think the last sentence in the model instruction is carefully phrased in that it doesn't suggest that they're breaking the law or that they may be subject to any punishments. It says, if you're convinced beyond a reasonable doubt, it's your duty to find the defendant guilty. But it doesn't say anything about possible sanctions. And in the Kleinman decision, this court actually said that the district court has the duty to forestall or prevent nullification. And Kleinman went on to kind of define the contours of what can and can't be said to address Your Honor's point. And in Kleinman, the court said the district court can't suggest that the jury will be punished for nullification. And they can't tell the jury that if they nullify, that acquittal will be vacated or set aside in some way. And so there is a bit of a tension between not making the jury aware and suggesting to them that there may be consequences. But I think the Kleinman decision has already kind of defined those contours of what the court can and cannot say. And this model instruction doesn't, I think, even approach that line. And I would note in the Lynch decision that's cited in the government's brief, the district court actually there went further than the model instruction. And the district court told the jury that nullification would be a violation of the oath and that the jurors could not substitute their own sense of justice for the law. And that's a 2018 decision. The district court upheld that instruction, which I think gets even closer to that line drawn in Kleinman than the model instruction here. And I would also note, as the appellant counsel pointed out, that there doesn't appear to be a Ninth Circuit decision addressing this particular sentence of the model instruction. But there are many other circuits who have substantially similar language, and that has been upheld by other circuits. Of course, that's not binding on this court, but I think the reasoning is helpful. I'm happy to provide those sites to the court. Yes, Your Honor. I'll start with Corporal Castarena. Again, as the court pointed out, Corporal Castarena was, in fact, familiar with ANPP. He testified that it was a precursor, and he went on to testify and explain correctly what that means, which not all of us who are not chemists understand. It's true that he did not know whether ANPP by itself was a federally controlled substance, but he knew the purpose of ANPP, and it has one purpose. There's no evidence in the record that it does anything else, and that's to make fentanyl. And as someone with a lot of experience in drug trafficking, appellant, I think, even concedes in her brief, he does appear to be an expert in drug trafficking. He did have a lot of experience with fentanyl and the way that drugs are packaged and kept, and so his testimony was relevant to that point. If he had been introduced as an expert on the Controlled Substances Act or an expert on ANPP in particular, I agree we might have an issue, but that wasn't the subject or the scope of his expert testimony. You had a chemist testifying to the actual substance? Yes, Your Honor, there was a chemist who testified as to what ANPP was, what it's used for, and he himself confirmed, yes, it's a controlled substance under the Federal Controlled Substances Act. I'm happy to address the other two experts, or I'm happy to submit if the Court has any further questions. I have a question about my colleague. I don't. I think not that. Thank you, Your Honors. Fair enough. All right. Very powerfully, I disagree that that last sentence has anything to do with an anti-nullification instruction or that this issue really didn't come up, but it's clearly not a correct statement of the law, and the judge had already instructed the jury. You have a duty to follow the law, whether you agree with it or not, and it can't be biased or whatever. If that's sufficient, why stick that last sentence in there? And there are many other circuits that don't have any language that even remotely comes along to say that there's a duty to convict, and I think that's the problem. Very well. All right. Thanks to you both for your argument. We appreciate it. The case just argued is submitted.
judges: Kelly, SMITH, COLLINS